DANTZLER v. MISSISSIPPI STATE HIGHWAY COMMISSION.

(In Banc. Jan. 4, 1941.)

[199 So. 367. No. 34304.]

Gardner, Backstrom & Gardner, of Gulfport, for appellant.

E. R. Holmes, Jr., Assistant Attorney General, and George R. Smith and White & Morse, all of Gulfport, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Appellant is the owner of lots 3, 4, 5, and 6, block 4, East Gulfport Subdivision of the City of Gulfport. On these lots there are two valuable residences fronting upon the Gulf of Mexico. Bounding these lots on the south is East Beach Boulevard, 60 feet in width, which was dedicated as a public highway or street in the original plat of the property. Immediately south of the boulevard are lots 3, 4, 5 and 6 of block 1 of the said subdivision.

In 1925 a massive concrete breakwater, known as the Harrison County Sea Wall, was constructed along this property, and a 50-foot sea wall right of way was obtained out of the four lots last described. There was thereby left between the boulevard and the sea wall right of way a strip of land in said lots about 40 to 50 feet wide and 308 feet in length.

The East Beach Boulevard is a part of U. S. Highway 90, and the travel had become so heavy upon it that the highway commission had determined to place another

paved highway lane to the south of the boulevard and to the north of and adjoining the sea wall, so as to make a two-way highway, the north lane for westbound traffic and the south lane for eastbound traffic. So to do it was necessary to obtain, for highway purposes, the narrow strip above described.

In the condemnation proceedings in the county court, the jury returned a verdict for $1 in damages. The judgment was affirmed by the circuit court, and the owner has appealed to this court.

The petition is in the following words and figures:

"Now comes the Mississippi State Highway Commission and respectfully shows unto the Court the following facts, to-wit:

"The State Highway Commission, Petitioner, is a body corporate of the State of Mississippi, organized under and by virtue of the authority of Chapter 122, Mississippi Code of 1930; that said Commission is composed of three members, to-wit: H. J. Patterson, Chairman, F. L. Linker and S. T. Roebuck, Commissioners, who are the duly elected, qualified and acting members of the said Commission; that the defendant, G. B. Dantzler, Owner, is a citizen and resident of Harrison County, Mississippi.

"Your petitioner further shows unto the court that it has full authority to locate, alter, change, construct and reconstruct any and all highways on the State Highway System and that the highway between Gulfport and Biloxi known as U. S. Highway No. 90 is a primary highway on the State Highway System; that by virtue of its authority, your petitioner has decided to locate and construct a project known as Beach Development, Section 'B,' Route U. S. Highway No. 90, and in order to locate and construct said project, your petitioner has found it necessary to obtain rights of way from various property owners and more particularly from the above-named defendant, G. B. Dantzler, Owner; that it is necessary to obtain a perpetual easement for right of way purposes, through,

over, on and across the following described land in Harrison County, Mississippi, to-wit:

"Lots 3, 4, 5 and 6 of Block 1, East Gulfport Subdivision, which said lots lie between the sea wall right of way on the South and the dedicated East Beach Boulevard on the North, situated in the City of Gulfport, Harrison County, Mississippi.

"The easement which your petitioner herein seeks to condemn is condemned on the following conditions, reservations and limitations:

"(a) The above easement is condemned for the purpose of public highway improvement, construction, reconstruction, use, maintenance and the plans for said improvement are now on file in the office of the State Highway Department at Jackson, Mississippi, and the Chancery Clerk's Office of said County, subject only to such minor changes as the State Highway Commission may deem necessary.

"(b) All the present aquatic and riparian rights running with the land through, over, on and across which the above easement is condemned shall be reserved to the owner and shall remain unaffected by the condemnation of the above easement.

"(c) No residence, pavilion, filling station, store or other building shall be erected on the land embraced in the easement herein condemned.

"(d) No part of the easement hereby acquired shall be used for business or commercial purposes, other than highway transportation.

"(e) If the easement herein condemned should not, at any time, be used for the purposes set forth herein, and such non-use should continue for a period of twenty-four consecutive months, or if said premises should ever, at any time, be used for any purpose other than as set forth herein, the easement herein granted shall thereby be terminated, and the title to said premises shall immediately revert to the defendant herein, his heirs, devisees, or assigns, in fee simple, freed from the easement aforesaid.

"(f) The easement herein condemned shall not, in any manner, abridge, curtail, or affect the absolute right of the defendant herein, his heirs, devisees, or assigns, to go on, over, or across the above-described land to the Gulf of Mexico, or Mississippi Sound or to the shores of said Gulf or Sound, provided, however, that the defendant is granted hereby no rights to construct anything on the above-described easement without the consent or approval in writing of the said Commission.

"That your petitioner has been unable to agree with the defendant on a price to be paid for a right of way easement over said land, and has, therefore, ordered that said land be condemned and has authorized and requested Greek L. Rice, Attorney General of Mississippi, to proceed with the condemnation of said property; a copy of said order being attached hereto as Exhibit 'A' to this petition and is made a part hereof by reference; that your petitioner is advised and believes and so alleges that this suit involving the public interest is a preference case and should be preferred to all other cases on the docket of this court.

"Whereof, premises considered, petitioner respectfully prays that the proper process of this Honorable Court issue summoning the defendant, G. B. Dantzler, Owner, to appear before this Honorable Court at the regular July, 1939, term hereof to defend their rights as against petitioner, and that at said term a hearing and determination of this cause be had to determine the amount this petitioner shall pay to defendant as damages for the taking of the above-described easement for public use and that upon a jury and verdict for the said amount awarded your petitioner can enter upon and take possession of the said easement and appropriate it to public use as hereinabove set out."

Appellant urges, as his first point, that the recital in the petition "that your petitioner has been unable to agree with the defendant on a price to be paid for a right of way easement over said land" is untrue, in this:

That although the petitioner did confer with the defendant and did offer him the sum of $1 for a deed to said right of way, the deed to contain the same stipulations and reservations as those recited in the quoted petition, such an offer was, as appellant contends, the legal equivalent of no offer at all. Appellant states in his testimony that he would have been willing to consider an offer for as little as $2,000, although he valued the strip at not less than $4,000.

The Statute, Section 4998, Code 1930, requires as a condition precedent to a condemnation of land by the highway commission that an attempt shall first be made to agree with the owner; and while this effort must be in good faith and on reasonable terms, the attempt need not be pursued further than to develop the fact that an agreement is impossible at any price which the condemning party is willing to pay, and particularly so when, as in this case, the price which the condemnor offered is supported as fair and just by competent witnesses, not connected either with the condemnor or the owner. 2 Lewis Eminent Domain (3 Ed.), pp. 895, 896. It is evident from this record that no prolongation of the efforts of the condemnor to agree would have produced an agreement, save on terms which the highway commission would have regarded as requiring an unjust payment out of public funds, which it was their duty to endeavor to conserve; and they may point to the verdict of the jury in this case, rendered after a view of the premises, as a sufficient refutation of the charge of arbitrariness or want of good faith on the part of the commission as regards the offer made by it.

As his second point, appellant contends that inasmuch as the statute provides for the condemnation of the land, the interest condemned must be of the entire land, without any reservations whatever, such as the quoted petition contains. No question is raised, nor could there be, but that the owner could make a valid deed, and that the highway commission could accept it, with those identical

reservations. And we hold that whatever reservations the commission could lawfully allow in a deed, they may allow and stipulate in the petition for condemnation, and that when so stipulated, the terms thereof are as binding upon the commission as had the same stipulations been contained in a deed from the owner.

It is a grave error to suppose that a condemnor of a right of way for a public road takes any such an interest as the entire fee in the land. In Campbell v. Covington County, 161 Miss. 374, 378, 137 So. 111, 112, this court said: "And, whether the right of way is acquired by condemnation or prescription, the title to the soil, and all the profits thereof consistent with the existence of the easement, remain in the original owner. The title of the owner, subject only to the easement, remains perfect, not only to the land covered by the highway, but to all the material within its boundaries, except such as may be needed to build or maintain the road. The owner has title to any superfluous earth, gravel, or rock, not necessary or useful to the construction or repair of the highway, and to all mines, quarries, trees, grass, springs of water, growing crops, pasturage upon and above the surface of the soil covered by the highway. But all these rights are subordinate to the use for which the land has been acquired by the public."

The point particularly under consideration was fully discussed and the authorities examined by the court in St. Louis, etc., Ry. Co. v. Clark, 121 Mo. 169, 189, 25 S. W. 192, 906, 26 L. R. A. 751. There the statute authorized the railroad company to condemn land for right of way purposes. In the condemnation there involved, the railroad tendered the stipulation that two crossings particularly described and to be maintained by the railroad company should be reserved and secured to the owner. The contention by the owner there, as in the case now before us, was that the railroad company must condemn and pay for the entire land without reservation, or not condemn at all.

But the court held, and we concur to the extent now hereinafter stated, that the condemning party is not required to go to the full extent permitted by the law in the taking of the land, but could voluntarily restrict itself to so much of the landowner's interest therein as the public need actually required, and as to any interest or use therein not so required or needed that interest or use not only might lawfully be left and secured to the owner, but in fact ought to be so left or reserved to him; and that the reservation being made the damages are assessed in view of the use or interest retained to the owner and not condemned; and the opinion further holds that it is proper to make such reservations in the petition itself.

Occasion may be taken here to say that it has been suggested that it was not competent for the owner to raise the two foregoing points in an eminent domain proceeding—that in such a proceeding the only question to be considered is that of the amount of the damages to be awarded, and that any other issue must be presented either by injunction or by prohibition. We do not herein decide the suggested question, but simply say that conceding for the purposes of this case, and for that purpose only, that the two points dealt with in the foregoing paragraphs may be raised in an eminent domain proceeding in the county court, they are not maintained on the merits.

As his third contention, appellant urges that the petition should have been dismissed because it is shown that the Gulfport & Mississippi Coast Traction Company owned an easement over the strip of land involved for the erection and maintenance of poles and wires for the transmission of electrical current, and this traction company was not made a party to the proceedings. Appellant relies on Section 1482, Code 1930, which requires a condemnor to make as defendants to its petition all persons having an interest in the land; that it is necessary in this connection only to say that the objection of nonjoinder is not available to a party not affected thereby. Medford

v. Mathis, 176 Miss. 188, 194, 168 So. 607; 47 C. J., p. 213; 15 Ency. Pl. & Pr., pp. 752, 753; Kern v. Coffin, 5 Cir., 203 F. 238; 2 Lewis Eminent Domain (3 Ed.), p. 966.

Appellant complains also of the instructions granted at the request of the condemnor. In a large measure the criticism of the instructions is founded upon the assumption that no such reservations and stipulations in favor of the owner as are contained in the quoted petition could be validly made therein, and that damages are not to be assessed in view of the use or interest retained to the owner. This assumption has already been disposed of; and when aside from it, the instructions are carefully considered they will be found to conform in every substantial respect with the principles laid down in the recent careful review of the subject in Mississippi State Highway Commission v. Hillman (Miss.), 198 So. 565.

The verdict and judgment must be reversed, however, because of the admission in evidence that 106 out of 108 owners of similar property had granted a right of way to the highway commission for this particular project for the consideration of $1 each. At the threshold and when counsel for the commission was making his opening statement, the owner objected to any statement as to what the other 106 owners had accepted for their right of way deeds, and asked that the jury be instructed to disregard any such statement, but the objection was overruled. The objection having thus been promptly made at the first appearance of the objectionable matter, it was not necessary for the owner to repeat the objection upon the recurrence of the same question in the further progress of the case. Herrin v. Daly, 80 Miss. 340, 31 So. 790, 92 Am. St. Rep. 605.

In State Highway Commission v. Buchanan, 175 Miss. 157, 189, 165 So. 795, 166 So. 537, it was foreshadowed that, when the questions were squarely presented and became necessary to decision, we would hold such evidence inadmissible; and we now expressly so hold. We have, upon full consideration, concluded that the better

rule is that which is supported by the weight of the authorities, namely, "that the price paid in settlement of condemnation proceedings or the sum paid by the condemnor for similar land, even if proceedings had not been begun, is not admissible. Such payments are in the nature of compromise, to avoid the expense and uncertainty of litigation, and are not fair indications of market value." 18 Am. Jur., p. 996, and annotations 43 L. R. A. (N. S.) 985.

Reversed and remanded.

## SEPARATE OPINION.

**Smith, C. J.**, delivered a separate opinion.

I concur in holding that the county court committed reversible error in admitting evidence of for what other owners of land, over which this highway passes, conveyed it, or a right of way over it to the highway commission, but I do not concur in holding that no other error appears in the rulings of the county court.

Two of the appellant's complaints are: (1) That the reservations to the owner of the land and limitations on the use to which the land can be put by the highway commission violate the governing statutes, and therefore his demurrer to the petition should have been sustained and the petition dismissed; and (2) the record does not disclose that the highway commission was unable to agree with the appellant on the price to be paid to the appellant for the land.

Whether these questions can be raised in an eminent domain proceeding begun in a county court depends on what is the procedure provided by statute for such courts in eminent domain cases.

Chapter 17, Code of 1930, provides for a county court in some but not all of the counties of the state. Section 1 (sec. 693) provides that it (the county court) "shall have exclusively the jurisdiction heretofore exercised by justices of the peace, in the following matters and causes,

viz: eminent domain . . .'' The jurisdiction exercised by justices of the peace in eminent domain proceedings is that conferred by Chapter 26 of the Code, so that the jurisdiction conferred on county courts in eminent domain matters is that and only that conferred on justices of the peace by Chapter 26 of the Code. By Section 696 of the Code, the procedure in the county court in eminent domain cases is that provided in Chapter 26 of the Code for justices of the peace in eminent domain proceedings. An exception to this appears in a proviso to Section 696 by which county courts are not confined, when instructing a jury in an eminent domain case, to the instructions to which justices of the peace are confined by Section 1491 of the Code. Mississippi State Highway Commission v. Reddoch et al., 184 Miss. 302, 186 So. 298; Mississippi State Highway Commission v. Hillman, Miss., 198 So. 565. Under Chapter 26 of the Code, when a petition is filed with the clerk of the circuit court of the county by a person or corporation authorized to exercise the right of eminent domain setting forth with certainty the right and describing the property sought to be condemned, the clerk designates a justice of the peace, who, together with a jury, drawn by the circuit clerk, the chancery clerk and the sheriff, constitute a court of eminent domain for the trial of the case, which court is authorized only to determine the value of the property to be taken and the damages, if any, resulting to the owner as a consequence of the taking. Section 1491, Code of 1930; Vinegar Bend Lumber Company et al. v. Oak Grove & G. R. Company, 89 Miss. 84, 43 So. 292. On an appeal to the circuit court from a judgment of this special eminent domain court, the circuit court is also confined to fixing the compensation to be paid the owner of the land, except that if it does not appear from the face of the petition filed with the circuit clerk that the condemnor was ''[entitled] to exercise the right of eminent domain,'' the clerk was without authority to convene the special court for its trial, and therefore the circuit court will dismiss the pro-

ceeding. Cumberland Tel. Co. v. Morgan, 92 Miss. 478, 45 So. 429. From this, it necessarily follows that a county court, in trying an eminent domain case, has jurisdiction only to determine (1) whether it appears from the petition that the petitioner is authorized to exercise the right of eminent domain, and if it does so appear, then (2) to determine the compensation to be paid by the condemnor to the owner of the land. The first presents an issue of law for the court to be raised by a demurrer to the petition. The second presents an issue of fact for the jury; no plea to the petition is necessary or contemplated by Chap. 26, Code 1930, for raising this issue of fact and none should be filed.

It appears from the petition here filed that the appellee is entitled to exercise the right of eminent domain claimed unless the conditions, reservations and limitations therein violate governing statutes. The statute under which the highway commission is authorized to exercise the right of eminent domain is Section 4998 of the Code, which provides that: ''Said commission in case it shall be unable to agree with the owners of land containing road building material or for any additional land necessary for widening any existing public highways, or laying out a new public highway, or changing the route of an existing public highway, as provided for in the foregoing part of this section, said commission shall be authorized to condemn any land needed for either of said purposes, as is fully set forth in this section and the proceedings to acquire such lands by condemnation shall be in conformity with the statutes on the subject of 'Eminent Domain.' The power of 'Eminent Domain' being hereby expressly conferred upon said commission for that purpose.'' The permission there given is to condemn ''land,'' not to carve out of it a particular estate (e. g. an easement) and condemn that. It is true that the only purpose for which the land is to be condemned is the construction of a highway over it. Nevertheless, the statute contemplates that, when a highway is constructed

over one's land, he shall be paid the full value of the land and not the value of any limited estate therein. A highway intended to be perpetual, particularly a paved highway, as the one here is, deprives the owner of the land over which it is constructed of any practical use of the land to the same extent as if he had parted with the fee therein. Under Section 17 of the State's Constitution, the owner of the land condemned for highway purposes is entitled to be paid the full market value thereof (Mississippi State Highway Commission v. Hillman, supra, and the many decisions of this court there cited) in cash. Brown v. Beatty, 34 Miss. 227, 69 Am. Dec. 389; Isom v. Mississippi Central R. Co., 36 Miss. 300, 313. "The commissioners or other tribunal to assess damages have no authority to give compensation in anything but money. It is erroneous, therefore, for them in their award to reserve to the owner certain easements or privileges in the property condemned, . . ." 2 Lewis on Eminent Domain (3 Ed.), sec. 756, 20 C. J. 594 and 843. As to this, there is a conflict in the authorities, some courts holding that the damage to the landowner may be reduced (paid in part) by reservations for his benefit on the use by the public of the land taken. Among the courts so holding is the Supreme Court of Missouri, but that court admonished us in the case cited in the opinion in chief that "the statutes of various states differ widely in respect to the proceedings in exercising the right of eminent domain, and the decisions of one state cannot safely be followed as precedents in another." The St. Louis, K. & N. W. R. Co. v. Clark, 121 Mo. 169, at pages 199 and 200, 25 S. W. 192, 906, 908, 26 L. R. A. 751.

The error in permitting these reservations and limitations did not stop with the overruling of the demurrer to the petition but was carried into the instructions to the jury granted the appellee. By two of them, the jury were charged that the "State Highway Department is not required to take the fee title to property condemned for such highway purposes, but may condemn only an

easement or right of way across such property'' and that the taking of this easement ''will not take away any part of defendant's ownership or title to any riparian rights.'' To call the jury's attention either by the petition filed for the condemnation of the land or by instructions from the court that all the highway commission is here seeking is an easement or right of way over the appellant's land to reservations to be made for the benefit of the owner, and limitations to be put on the commission's use of the land suggests to and permits the jury to award the owner less than the value of his land—exactly what here occurred according to the evidence for the appellant, his compensation being fixed by the jury at $1.

To what use a public highway may be put is governed by law, and where part of a tract of land is taken for highway purposes and it is thereafter put to a use not authorized by law when taken, the owner of the remaining land has a cause of action therefor if injured thereby. The statutes hereinbefore cited do not contemplate that the highway commission, when condemning land and paying full value therefor, should agree to a limitation on its use, nor that such a limitation shall appear in the eminent domain judgment. Moreover, if the limitations are within the law, they are unnecessary, and if beyond the law (that is, restrict the use to which the law authorizes the land to be put), they are void. When a landowner voluntarily conveys land to the highway commission, he may, within limitations, limit the use to which it may be put, and if thereafter it becomes necessary in the public interest to eliminate this limitation, it can be done only with the consent of the landowner or by an eminent domain proceeding; but, where the highway commission pays the owner of the land its full value for a conveyance thereof, which it has the right to do under Section 4998 of the Code, it is hardly probable that the statute contemplates that it may accept a conveyance limiting the use of the land more narrowly than the law itself would.

Since the highway commission must pay full value for the land, the estate it will obtain therein by this proceeding is of no concern in determining this value, and no authoritative decision thereon can be here rendered.

What I have here said has no application to the statutes providing for the condemnation of land for purposes other than the construction of a public highway thereon; for instance, for the construction of telephone, telegraph, electric power lines, etc. The rights and liabilities of a condemnor depend on the statute under which the condemnation is sought.

I am of the opinion that the court below erred in not sustaining the appellant's demurrer to the appellee's petition, and in granting the appellee the two instructions hereinbefore set forth.

This brings me to the appellant's claim that the highway commission made no attempt, before instituting this eminent domain proceeding, to reach an agreement with him as to the compensation he should receive for the land to be taken, as required by Section 4998 of the Code. The petition alleges that the petitioner was unable to agree with the appellant on the compensation to be received by him, thereby disclosing, if this allegation is true, that the commission had the right to institute this proceeding. Whether this allegation is true is not a matter into which the county court, as hereinbefore set forth, could inquire. But, continuing as if I am mistaken as to that, the appellant filed an answer to the petition, containing, among other matters, a plea in bar of the action alleging that the appellee had made no attempt to agree with the appellant on the value of the land. The failure, if such there was, of the appellee to attempt to agree with the appellant on the compensation to be paid him for the taking of the land will not bar, but will only abate, this action. Consequently, this issue, if one to be tried by the county court, should have been raised by a plea in abatement. Such a plea presents a preliminary issue to be tried and determined before the trial on the main issue

in the case begins. Moreover, in an eminent domain proceeding, the jury charged with fixing the compensation to be paid the owner of the land taken is authorized by Section 1492, Code of 1930, to return only a verdict fixing his compensation. No ruling on the question raised by the plea appears in the record unless in the refusal of the court below to direct a verdict for the appellee. But that aside, whether or not this question is one for the decision of an eminent domain court is not decided in the controlling opinion herein, the court simply holding that assuming for the purpose of the argument that the court was without such authority, the contention that no attempt was made by the appellant to reach an agreement with the appellee as to the value of the land is ''not maintained on the merits.'' I cannot concur in so holding for if the court below was without jurisdiction to inquire into the matter, it was, and this court is, without the right to decide the merits of that controversy, and any decision thereon is coram non judice. But, if I am mistaken as to that, the evidence discloses that the appellee made no sort of effort to agree with the appellant. My views hereon will more fully appear in Rand v. Mississippi State Highway Commission (Miss.), 199 So. 374.